Kimberly R. PITCHFORD, Plaintiff,

v.

OAKWOOD MOBILE HOMES, INC., et al., Defendants.

No. Civ.A. 5:99CV00053.

United States District Court,
W.D. Virginia,
Harrisonburg Division.

July 29, 2002.

Timothy Earl Cupp, Cupp & Cupp, P.C., Harrisonburg, VA, Dale Wood Pittman, Law Office of Dale W. Pittman, Petersburg, VA, Thomas Dean Domonoske, Law Office of Dale W. Pittman, Harrisonburg, VA, for plaintiff.

Randall Tyree Perdue, Boyce Eugene Brannock, Timberlake, Smith, Thomas & Moses, PC, Staunton, VA, for defendants.

## MEMORANDUM OPINION

MICHAEL, Senior District Judge.

This matter comes before the court on the plaintiff's motion for attorney's fees and costs, filed July 16, 2001. The above-captioned civil action was referred to the presiding United States Magistrate Judge for proposed findings of fact, conclusions of law, and a recommended disposition. *See* 28 U.S.C. § 636(b)(1)(B). In his September 10, 2001 Report and Recommendation, Magistrate Judge B. Waugh Crigler recommended that the court grant the plaintiff's motion. The defendant filed timely objections to the Magistrate's recommendation, to which the plaintiff responded. The court has performed a *de novo* review. *See* U.S.C. § 636(b)(1)(B) (West 1993 & Supp.2000); Fed.R.Civ.P. 72(b). Having thoroughly considered the entire case and all relevant law, the court declines to follow the Report and Recommendation and, for the reasons stated herein, shall deny the plaintiff's motion for attorney's fees and costs.

### I.

The Plaintiff, Kimberly R. Pitchford, entered into an agreement with Oakwood Homes to purchase a certain mobile home

with financing provided by Oakwood Acceptance (collectively "Oakwood"). The plaintiff alleged that the mobile home delivered to her and set-up in July, 1997 suffered from major defects and structural problems. Pitchford sought to cancel the purchase agreement and to recover monetary damages and initiated this action to recover those damages for alleged breaches of warranties, violations of the Virginia Consumer Protection Act ("VCPA"), violations of the Magnusen–Moss Act and for fraud, to which the defendant initially responded by moving to dismiss or to compel arbitration. This court, in its November 13, 2000 memorandum order, adopted the Magistrate Judge's recommendation to deny the defendants' request to dismiss or compel arbitration. Thereafter, the plaintiff was permitted to amend her complaint, which the defendants moved to dismiss on substantive grounds. The Magistrate Judge entertained argument and issued a Report and Recommendation on April 11, 2000 recommending denial of the motions.

On April 16, 2001, the plaintiff notified the court that the parties had reached a settlement and compromise on the plaintiff's substantive claims and were attempting to settle all issues of costs, expenses and attorney's fees. On May 29, 2001, the plaintiff submitted a status report in which she represented that the parties had failed to resolve informally the issue of costs, expenses and legal fees. The parties agreed to a settlement conference before the Magistrate Judge. Pursuant to this court's order of reference under 28 U.S.C. § 636(b)(1)(B), the Magistrate Judge entertained argument and issued a Report and Recommendation on September 10, 2001 recommending that the plaintiff be awarded attorney's fees and costs in excess of $50,000.00. In his report, the Magistrate Judge held that an award of attorney's fees was warranted under both the applicable federal and state law. The defendants objected to this report.

The defendants do not address the reasonableness of the amount sought by plaintiff Pitchford. Instead, they contend that the plaintiff is entitled to nothing on her claim for counsel fees, costs and associated expenses. In support of their position, the defendants offer that the plaintiff is neither a "prevailing party" under the applicable federal law, nor did she receive "an award of damages" under Virginia law. According to the defendants, therefore, the plaintiff is not qualified to benefit from the statutory fee shifting provisions.

II.

"In the United States, parties are ordinarily required to bear their own attorney's fees—the prevailing party is not entitled to collect from the loser." *Buckhannon Board and Care Home, Inc. v. West Virginia Dep't of Health & Human Resources,* 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) (citing *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)). Under this "American Rule," courts follow "a general practice of not awarding fees to a prevailing party absent explicit statutory authority." *Key Tronic Corp. v. United States,* 511 U.S. 809, 819, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994). There are numerous statutes, however, under which Congress has authorized the award of attorney's fees to the "prevailing party."

For example, a court can award reasonable attorney's fees to a consumer who "finally prevails" in an action brought under the Magnusen–Moss Act. Specifically, Magnusen–Moss provides for the payment of costs and expenses, including attorney's fees, which the court determines "to have been reasonably incurred by the plaintiff in connection with the commencement and prosecution" of the case, unless the court also determines that "such an award of attorneys' fees would be inappropriate." 15 U.S.C. § 2310(d)(2) (West 2002).

The defendants argue that the plaintiff is not entitled to attorney's fees under Magnusen–Moss for two principal reasons: (1) the plaintiff cannot be considered a prevailing party because she did not receive a judicial decision on the merits of her claim and (2) the facts related to the settlement do not allow a finding that the plaintiff prevailed. Before the court specifically can consider the merits of the two defenses, however, it is necessary first to address the threshold issue of whether the plaintiff "prevailed" in her action. The Supreme Court, in *Buckhannon*, addressed the issue of when a litigant can be deemed a "prevailing party," so as to take advantage of statutory fee shifting provisions.

In *Buckhannon*, the plaintiff sought an award of attorney's fees and expenses in a case arising out of the settlement of claims brought under the Fair Housing Amendments Act of 1988 (FHAA) and the Americans with Disabilities Act of 1990(ADA), on the basis that the settlement was a "catalyst" to change the defendants conduct. The trial court, however, did not incorporate the settlement into any consent decree and the case was ultimately dismissed as moot in light of the settlement. The Supreme Court held that under the respective fee shifting provisions of the FHAA and the ADA, a plaintiff whose case was settled but dismissed without a final judgment on the merits or a consent decree was not a statutory "prevailing party" and could not recover attorney's fees based on a "catalyst theory."[1] *Buckhannon*, 121 S.Ct. at 1843.

In his Report and Recommendation, the Magistrate Judge found that *Buckhannon*

is distinguishable in several ways. The first difference, according to the Magistrate Judge, is "that the instant action is not one brought under the FHAA or the ADA, but under Magnusen–Moss." September 10, 2001 Report and Recommendation, page 6 (hereinafter "R & R"). The statutory language concerning the availability of attorney's fees under Magnusen–Moss varies from that contained in either the FHAA or the ADA. The Magistrate Judge, therefore, argued that while a final judgment is necessary for recovery of attorney's fees under the FHAA or the ADA, it may not be a prerequisite for recovery of fees under Magnusen–Moss. The Magistrate's own words are worth quoting:

> [W]hile the fee shifting provisions of Magnusen–Moss require that the plaintiff seeking fees and expenses be one who 'finally prevails,' ... in language far different from that contained in the FHAA and the ADA, Congress allows recovery of fees and costs that are determined to be 'reasonably incurred ... for or in connection with the *commencement and prosecution* of such action ...'

*Id.* (quoting 15 U.S.C. § 2310(d)(2) (emphasis in original)). The Magistrate Judge, therefore, concludes that if the phrase "finally prevails" is explained in relationship with either "commencement" or "prosecution," then the a final judgment might not be a condition precedent for recovery of fees under Magnusen–Moss. *Id.*

It is the judgment of the court, however, that the Magistrate Judge misinterpreted

---

1. Champions of the "catalyst theory" contend that a settled lawsuit that operates as a catalyst for post-litigation changes in a defendant's conduct should be sufficient to establish a plaintiff as a prevailing party. The 4th Circuit refused to adopt the "catalyst theory."

*See S–1 and S–2 v. State Bd. of Ed. Of N.C.*, 21 F.3d 49, 51 (4th Cir.1994) ("A person may not be a 'prevailing party' ... except by virtue of having obtained an enforceable judgment, consent decree, or settlement giving some of the legal relief sought.").

*Buckhannon* in formulating the aforementioned distinction. After explaining that Congress has authorized the award of attorney's fees to the "prevailing party" in numerous statutes, the *Buckhannon* court noted that the Supreme Court has "interpreted these fee-shifting provisions consistently." *Buckhannon*, 121 S.Ct. at 1839. The Fourth Circuit clarified this statement by explaining that the fee shifting provisions should be interpreted "without distinctions based on the particular statutory context in which it appears." *Smyth v. Rivero*, 282 F.3d 268, 274 (4th Cir.2002)[2] (citing *Buckhannon* ).

■ The "finally prevails" language in Magnusen–Moss, therefore, is to be given the same interpretation as it is in other fee shifting provisions. In *Buckhannon*, the Court stated that in order to have "finally prevailed," a party must have obtained either a judgment on the merits or reached a settlement agreement that was enforced through a consent decree. *Buckhannon*, 121 S.Ct. at 1840. Absent either of those two scenarios, a party has not "finally prevailed," and is not entitled to an award of attorney's fees under a fee shifting provision. To that end, in order to recover attorney's fees under Magnusen–Moss, a party must have either obtained a judgment on the merits or, alternatively, reached a settlement agreement enforced through a consent decree.

### A. The Adjudications:

First, the court must consider whether plaintiff Pitchford finally prevailed by procuring a final judgement on the merits. A final judgment on the merits, according to the Supreme Court, " 'creates the material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." *Buckhannon*, 121 S.Ct. at 1840 (quoting *Texas State Teachers Assn. v. Garland Independent School Dist.*, 489 U.S. 782, 792–793, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)). The Magistrate Judge suggests that the plaintiff "obtained significant affirmative relief from the court which altered the parties' legal relationship." R & R at 7. This significant relief, according to the Magistrate, is composed of (1) this court's denial of the defendant's request to dismiss or compel arbitration and (2) the Magistrate's recommendation adversely adjudicating Oakwood's motion to dismiss. In order to recover attorney's fees under Magnusen–Moss, one of the preceding two events must constitute a final judgment on the merits. This court will consider each event in turn.

■ The Magistrate Judge explained that the decision related to arbitration "struck at the heart of defendants' case because it adjudicated process issues the defendant had steadfastly refused to concede and opened a door for the plaintiff to a court forum that defendant had consistently attempted to keep shut." R & R at 7. While this might be true, the decision is not the equivalent of a final judgment on the merits. Put differently, plaintiff Pitchford did not "finally prevail" on her Magnusen–Moss action because she obtained a court order adjudicating the arbitration issue in her favor. In order for a plaintiff finally to prevail in an action, the court first must address the merits of her claim.[3] Although important, the order resolving the arbitration issue simply allowed the

---

**2.** Unlike the Magistrate Judge, this court has had the benefit of the Fourth Circuit's interpretation of *Buckhannon* in *Smyth v. Rivero*, which was decided after the Magistrate Judge made his recommendation in the present controversy.

**3.** The Supreme Court held that a plaintiff must receive " 'at least some relief on the merits ... before he can be said to prevail.' " *Buckhannon*, 121 S.Ct. at 1840 (quoting *Hewitt v. Helms*, 482 U.S. 755, 760, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987)).

plaintiff a forum in which to bring her substantive claim, it in no way was a decision on the merits of her underlying Magnusen–Moss action.

■ Additionally, there is no dispute that this court's adoption of the Magistrate's recommendation to deny the defendants' request to dismiss or compel arbitration was a procedural victory for the plaintiff. Prevailing on preliminary procedural matters, however, does not establish a litigant as a prevailing party so as to take advantage of statutory fee shifting provisions. See, e.g., Smyth v. Rivero, 282 F.3d 268, 276 (4th Cir.2002). In Smyth, for example, the Fourth Circuit held that a preliminary injunction was not the type of judicial relief that was sufficient for an award of attorney's fees under a statutory fee shifting provision. Id. If the granting of a preliminary injunction, which involves an inquiry into the merits of a party's claim, is insufficient to garner attorney's fees, then it follows that a ruling on a procedural issue, which does not involve an inquiry into the merits of a claim, also is insufficient.[4]

■ The second event which this court must consider is the Magistrate Judge's recommendation adversely adjudicating defendant Oakwood's motion to dismiss. Although the Magistrate addressed the merits of the underlying action in recommending a denial of the defendants' motion to dismiss, the Magistrate's recommenda-

tion did not constitute a final decision. To the contrary, the parties settled the matter before this court had the opportunity to consider the Magistrate Judge's recommendation and the objections of the defendants thereto.

The Fourth Circuit's analysis of the preliminary injunction in Smyth again is applicable. In Smyth, the court explained that "[t]he fact that a preliminary injunction is granted in a given circumstance . . . by no means represents a determination that the claim in question will or ought to succeed ultimately." Id. at 276. Similarly, the Magistrate Judge's decision to deny the defendants' motion to dismiss is in no way representative of whether the plaintiff's Magnusen–Moss claim would succeed ultimately. To that end, the Magistrate Judge's recommendation cannot be considered a final judgment on the merits.

### B. The Settlement Agreement:

■ Having decided that Pitchford did not procure a final judgment on the merits, the dispositive question then becomes whether Pitchford obtained prevailing party status by virtue of settling her claims against Oakwood. Although the two parties reached a settlement agreement, the terms of the agreement were never incorporated into an order of this court. A party may not prevail for purposes of a fee shifting provision by virtue of a private settlement agreement alone. Buckhannon, 121 S.Ct. at 1840.[5] Prior to Buck-

---

4. Other courts have reached similar conclusions. In Muscare v. Quinn, 614 F.2d 577 (7th Cir.1980), for instance, the Seventh Circuit held that the plaintiff was not a prevailing party within the meaning of the statute where her success in litigation was only in context of establishing procedural rights, and the procedural issue, though significant, was not main part of the plaintiff's case. Additionally, in NAACP v. Wilmington Medical Center, Inc., 689 F.2d 1161 (3rd Cir.1982), the Third Circuit decided that the plaintiffs were not prevailing parties for purposes of the statute

where the district court decided that the plaintiffs had a private cause of action to enforce Title VI of the 1964 Civil Rights Act since such a decision was procedural and provided nothing to advance the plaintiff's claim for relief.

5. Specifically, the Court noted that "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change." Buckhannon, 121 S.Ct. at 1840. The Su-

hannon, the Supreme Court suggested that a party may prevail for purposes of a fee shifting provision by virtue of a private settlement. See Maher v. Gagne, 448 U.S. 122, 129, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980); Farrar v. Hobby, 506 U.S. 103, 111, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). The Buckhannon Court, however, explained that its prior "dicta" indicating that private settlements could support prevailing party status had "ignore[d] that Maher only 'held that fees may be assessed . . . after a case has been settled by the entry of a consent decree.' " Buckhannon, 121 S.Ct. at 1840 n. 7 (quoting Evans v. Jeff D., 475 U.S. 717, 720, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986)).

■ Even assuming, arguendo, that the Buckhannon Court did not intend its decision to be interpreted so restrictively as to require that the words "consent decree" be used expressly, the private settlement in this matter is still insufficient in establishing Pitchford as the prevailing party. The Fourth Circuit, in Smyth, noted that "[w]here a settlement agreement is embodied in a court order such that the obligation to comply with its terms is court-ordered, the court's approval and the attendant judicial over-sight (in the form of continuing jurisdiction to enforce the agreement) may be equally apparent." Smyth 282 F.3d at 281. The court assumed, therefore, that "an order containing an agreement reached by the parties may be functionally a consent decree for purposes of the inquiry into which Buckhannon directs us, even if not entitled as such." Id. The issue, then, is whether the terms of settlement agreement reached between Pitchford and Oakwood were in fact made an enforceable part of a court order, as those of a consent decree would be.

■ The Supreme Court, in Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994), examined the issue of when the obligation to comply with the terms of a settlement agreement had been made part of a court order. Under Kokkonen, the obligation to comply with a settlement's terms must be explictly made part of a court's order for jurisdiction to exist to enforce the settlement after dismissal of the action. Id. at 381, 114 S.Ct. 1673. "The rule that a court's order must embody a settlement agreement to serve as a basis of jurisdiction to enforce the agreement is 'adhered [to] strictly.' " Smyth, 282 F.3d at 283 (quoting In re Phar–Mor, Inc. Securities Litigation, 172 F.3d 270, 274 (3rd Cir.1999)). The Fourth Circuit has interpreted this rule to require that the district court give a clear indication that it is incorporating the terms of the settlement agreement into a court order or is retaining jurisdiction over the agreement. Smyth 282 F.3d at 283.

In this case, the terms of the settlement were never made part of a court order. There is nothing in an order of this court suggesting that the terms of the parties' agreement were incorporated into the order itself by an indication that the agreement terms must be complied with pursuant to the order itself, as opposed to the principles of contractual obligation. Both parties, however, agreed to have the court resolve the fee and expense issues before the case finally was taken off the court docket. To that end, the court retained jurisdiction over the costs and legal fees issue, but did not retain jurisdiction over the terms of the settlement agreement itself. A breach of the agreement would not be a breach of any court order. The settlement agreement entered into between

preme Court also explained that "[n]ever have we awarded attorney's fees for a nonjudicial

'alteration of actual circumstances.' " Id. at 1841 (internal citations omitted).

Pitchford and Oakwood, therefore, is insufficient to confer prevailing party status on the plaintiff.

## III.

Because the court retained jurisdiction over the attorney's fees issue, our inquiry is not complete. It is the court's duty to effectuate the intent of the parties. If the only disagreement between the parties concerned the amount of attorney's fees, not whether counsel's fees should be paid at all, then the court's sole responsibility would be to determine the reasonableness of the plaintiff's request. In order to determine the intent of the parties, the court must examine the settlement agreement.

Provision 8 of the settlement agreement provides that the issue of attorney's fees has not been "waived, decided, agreed upon or paid" and that "[a]ny and all costs and attorneys' fees due to Pitchford's counsel will, by agreement of the parties, either be resolved by subsequent agreement ... or be decided by the U.S. District Court." Mutual Release in Full of all Claims, Save and Except, Costs and Attorneys' Fees, Provision 8. The agreement does not indicate that the parties agreed that the defendants owed the plaintiff attorney's fees, but rather that the entire issue, absent a subsequent agreement, would be resolved by this court. To that end, the plaintiff ran the risk that the court would find that she was not entitled to recover any legal fees. While the court sympathizes with plaintiff Pitchford, absent an agreement to the contrary, the court is bound by the law governing the award of attorney's fees as enumerated in *Buckhannon* and *Smyth.*

Not only did the parties not expressly agree that Pitchford was entitled to legal fees, the plaintiff neither procured a final judgement on the merits nor did she obtain a court-ordered consent decree enforcing the terms of the settlement agreement. To hold that Pitchford is entitled to attorney's fees, therefore, would defeat the Supreme Court's admonition that counsel's fees should not be awarded to a plaintiff who, "by simply filing a nonfrivolous but nonetheless potentially meritless lawsuit (it will never be determined), has reached the sought-after destination without obtaining any judicial relief." *Buckhannon* 121 S.Ct. at 1841 (internal quotation marks omitted).

## IV.

■ Although the plaintiff's argument for attorney's fees is based primarily on federal law, the plaintiff also brought action under the Virginia Consumer Protection Act.[6] Not unlike the analysis of federal fee shifting provisions in *Buckhannon,* an analysis of the VCPA compels the conclusion that only a plaintiff who has finally prevailed on the merits of a Consumer Protection claim and been "awarded" damages is entitled to recover attorney's fees. The VCPA provides that "in addition to any damages awarded, such person [who suffers loss due to a VCPA violation] also may be awarded reasonable attorney's fees and court costs." VaCode Ann. § 59.1–204(B) (West 2002).

The Magistrate Judge argued that "receiving compensation under a settlement is tantamount to an award of damages for VCPA purposes." R & R at 10. In support of his position, the presiding Magis-

---

**6.** In her motion for award of reasonable attorney's fees and costs, the plaintiff explains that "[b]ecause the federal consumer protection statute is broader than the fees and costs allowed under the VCPA, this fee request will be discussed in the context of the federal fee shifting statutes." Plaintiff's Motion for Award of Reasonable Attorney's Fees and Costs, page 4.

trate Judge emphasized that the parties characterize the compensation paid to the plaintiff as "damages." This, according to the Magistrate, suggests that the parties intended for the plaintiff to receive reasonable attorney's fees pursuant to the VACP. The VACP, however, provides that there must be an "award" of damages.

 "Award" is defined as "to grant by formal process or by judicial decree." BLACK'S LAW DICTIONARY 132 (7th ed.1999). The term "award," therefore, indicates that the VCPA contemplates an adjudication on the merits of the plaintiff's claim before attorney's fees can be awarded. Put differently, the granting of damages after an adjudication on the merits of a claim is a condition precedent to an award of attorney's fees under the VCPA. The settlement agreement reached between the parties in this matter is not analogous to a grant by formal process or by judicial decree. Indeed, the parties settled the plaintiff's substantive claims without the court's intervention. There are no Virginia cases awarding counsel's fees to a plaintiff settling and compromising a claim brought under the VCPA. Plaintiff Pitchford, therefore, is not entitled to attorney's fees under the VCPA.

## V.

In accordance with the foregoing, the Report and Recommendation shall be rejected and the Plaintiff's Motion for Award of Reasonable Attorney's Fees and Costs shall be denied. An appropriate order shall this day enter.

### ORDER

For the reasons stated in the accompanying memorandum opinion, it is this day

### ADJUDGED AND ORDERED

(1) that the Magistrate Judge's September 10, 2001 Report and Recommendation shall be, and it hereby is, REJECTED and

(2) that the Plaintiff's Motion for Award of Reasonable Attorney's Fees and Costs, entered July 16, 2001, shall be, and it hereby is, DENIED.

The Clerk of the Court hereby is directed to send a certified copy of this Order to all counsel of record and to Magistrate Judge Crigler.