Kenneth S. BENIGNI, Appellant,

v.

COUNTY OF ST. LOUIS, Respondent.

No. C5–97–2240.

Supreme Court of Minnesota.

Oct. 15, 1998.

Kenneth S. Benigni, Cotton, pro se.

Alan L. Mitchell, St. Louis County Atty., Amy J. Hunt, Asst. County Atty., Duluth, for Respondent.

## OPINION

PER CURIAM.

Appellant argues that the tax court erred in hearing respondent's motion for summary judgment, granting summary judgment for respondent, dismissing many of appellant's claims, and failing to assess costs. We conclude that the tax court did not err in any of its rulings, and accordingly affirm.

### I.

In January 1995, the local property assessor increased the 1995 estimated market values (EMVs) on four plots of land in Cotton Township owned by appellant Kenneth S. Benigni, affecting the property taxes payable in 1996. Benigni appealed the assessor's determination of his properties' 1995 EMVs to the Cotton Township Local Board in April 1995, and, when it denied his appeal, he appealed to the St. Louis County Board of Equalization on June 7, 1995. The St. Louis County Board of Equalization reduced the EMVs on all four of Benigni's properties.

On June 28, 1995, after the St. Louis County Board of Equalization reduced the values of Benigni's properties, the State Board of Equalization ordered a 15% increase in the market value of all residential land in Cotton Township. In February 1996, Benigni received four property tax statements, which were each based on the respective properties' 1995 EMVs. The 1995 EMVs included the state-ordered 15% increase, which in turn increased the ad valorem taxes owed by $20.44 cumulatively.

On January 2, 1996, the township sent out notices of the 1996 EMVs, from which taxes payable in 1997 would be determined. The 1996 EMVs included an increase imposed by the local property assessor. Benigni appealed his 1995 and 1996 property assessments, for taxes payable in 1996 and 1997 respectively, to the Cotton Township Local Board in April of 1996. This second appeal of the 1995 assessments was in response to the 15% state-ordered increase. The Cotton Township Local Board reduced the 1996 assessments on two of the four parcels to their 1995 EMVs, but did not reduce the 1995 state-ordered increase on the four properties.

Benigni then appealed both the 1995 and 1996 property assessments to the St. Louis County Board of Equalization. In May of 1996, the St. Louis County Board of Equalization reduced the 1996 assessments on the other two parcels to their 1995 EMVs, but did not reduce the state-ordered increase in market value on any of the four properties. As a result of these appeals, all four of Benigni's 1996 property EMVs, for taxes payable in 1997, were reduced to their 1995 EMV levels. Property tax statements were mailed to Benigni in early 1997, based on the reduced EMVs.

On March 30, 1997, Benigni filed suit against St. Louis County in the Minnesota Tax Court challenging the EMVs of his properties in 1995 and 1996. He also requested relief from an alleged pattern of harassment by the local assessor and requested notice be taken of alleged improper valuations of other Cotton Township residents' lots.

In an attempt to settle the case, on May 23, 1997, the County mailed Benigni a stipulation reducing his properties' 1996 EMVs to their 1995 levels before the state increase, and dismissing the rest of Benigni's claims. Although Benigni received the proposed stipulation, he did not respond. Thereafter, the County filed a motion for summary judgment

with the tax court on October 17, 1997, requesting the ad valorem reductions set forth in the stipulation and dismissing the rest of Benigni's claims. Benigni responded to the motion on October 28, 1997.

The tax court held a hearing by telephone on October 29, 1997,[1] and granted the relief requested by the County. Benigni's property assessments were reduced for 1996, thereby lowering his 1997 tax liability, and the rest of Benigni's claims were dismissed based on the tax court's lack of jurisdiction. After the hearing, the county attorney administratively abated Benigni's property assessment for 1995, reducing his tax liability in 1996.

## II.

■ We first address Benigni's contention that the tax court erred in hearing the motion for summary judgment on October 29, 1997, because the County served the motion twelve, rather than thirteen, days before the hearing. A summary judgment motion shall be served at least ten days before its hearing, plus an additional three days if the motion is served by mail.[2] However, summary judgment may be upheld even if it does not meet the timing requirements when it is "granted at a pre-trial hearing or other comparable hearing, full discovery has been conducted or when there are no material facts in dispute, judgment for one party is proper as a matter of law, and there is no prejudice to the objecting party as a result of the lack of notice."[3] In determining whether the objecting party was prejudiced, courts will consider whether new arguments or issues are raised in the summary judgment motion, whether respondent is caught off guard, and

whether respondent is denied a meaningful opportunity to prepare.[4]

■ Although Benigni contends he was prejudiced by the County serving its summary judgment motion one day late, we do not agree. Benigni had adequate advance notice of the County's position through the proposed stipulation of May 1997, which provided the same relief as granted by the tax court's summary judgment. Furthermore, most of Benigni's claims fell beyond the scope of the tax court's jurisdiction as discussed below, and therefore the timing for service of the summary judgment motion was immaterial to the case's outcome. Finally, the tax court determined the property values only after affording the parties a hearing by telephone during which Benigni had the opportunity to present his case. In fact, Benigni had time to assemble a 93–page record for the tax court prior to the hearing. We therefore conclude that Benigni was not prejudiced by the county's serving the summary judgment motion one day late.

Benigni also maintains that the tax court erred in granting summary judgment to the County because he contests the County's valuations of his land. In reviewing a summary judgment, we are limited to determining "whether there are any genuine issues of material fact and whether the trial court erred in its application of the law."[5] A party may not oppose a motion for summary judgment by relying on "unverified and conclusionary allegations in his pleading or by postulating evidence which might be developed at trial in the course of cross-examination of adverse parties under the rules,"[6] but must

1. Although Benigni takes issue with the form of the hearing, the tax court is empowered to hold telephonic hearings under Tax Court Procedure Rule 8610.0070, subp. 11.

2. *See* Tax Court Rule 8610.0070, subp. 3 (incorporating Minn. R. Civ. P. 56.03); Minn. Gen. R. Prac. Dist. Ct. 115.01(b).

3. *Kabanuk Diversified Investments, Inc. v. Credit General Insurance Co.*, 553 N.W.2d 65, 69 (Minn. App.1996). *See also, Wikert v. Northern Sand and Gravel, Inc.* 402 N.W.2d 178 (Minn.App. 1987) (summary judgment upheld although motion filed eight days before hearing when there

were no material facts in dispute, judgment as a matter of law was warranted, and there was no prejudice to opposing party), *pet. for rev. denied* (Minn., May 18, 1987).

4. *Kabanuk*, 553 N.W.2d at 69.

5. *Hertz Corp. v. State Farm Mut. Ins. Co.*, 573 N.W.2d 686, 688 (Minn.1998) (internal cite omitted).

6. *Rosvall v. Provost*, 279 Minn: 119, 123, 155 N.W.2d 900, 904 (1968).

"present specific admissible facts showing a material fact issue." [7]

Benigni claims that the actual value of his properties decreased between June of 1995 and January of 1996 and that therefore the 1996 assessments should have been reduced below the 1995 assessment values on all four of his properties. As evidence of damage to his lands, Benigni introduced his affidavit and undated photographs of his properties allegedly depicting deforestation and mining of gravel pits, and the effects of his neighbors dumping old cars onto the properties. The evidence submitted by Benigni does not demonstrate that his properties decreased in value between June of 1995 and January of 1996. Rather, Benigni has asserted only broad allegations against his neighbors and the township. In light of the lack of proof offered by Benigni in his 93-page series of exhibits, and the conclusory nature of his allegations, we hold that the tax court did not err in finding that no genuine issues of material fact exist.

### III.

Benigni next argues that the tax court erred in dismissing his motion to reduce the 1995 property tax assessments on the basis of timeliness and his claims of fraud in the assessor's office because they were outside the tax court's jurisdiction.

First, we address Benigni's challenge to the dismissal of his motion to reduce the 1995 property tax assessments. The tax court dismissed this challenge on jurisdictional grounds, finding that the statute of limitations had run. The construction and applicability of statutes of limitations are questions of law that this court reviews de novo.[8]

A challenge to a property tax assessment brought in tax court must be filed by March 31 of the year in which the tax becomes payable.[9] Benigni filed the petition for his 1995 property assessments on March 30, 1997, almost a year after the statutory deadline had lapsed. No statutory exception excuses Benigni's tardiness. Therefore, the tax court correctly dismissed Benigni's claim contesting his 1995 assessments for lack of timeliness.

We also review the dismissal of Benigni's claims of fraud de novo.[10] The tax court's jurisdiction is narrowly circumscribed by statute. It has "no jurisdiction in any case that does not arise under the tax laws of the state * * *." [11] Benigni requested that the tax court order the St. Louis County assessor to stop harassing Benigni, address alleged misconduct by the local property assessor, and bring to the attention of the State Attorney General and Commissioner of Revenue alleged under-assessments of other Cotton Township residents' lots. These claims do not arise under tax laws, and therefore fall outside the tax court's jurisdiction. We hold that they were properly dismissed.

### IV.

Finally, both parties claim that the tax court erred in not awarding costs in this dispute, and both contend that they are the deserving party. We review the tax court's award of costs under an abuse of discretion standard.[12]

Under Minnesota Statute section 549.04, a prevailing party "shall be allowed" reasonable costs in a district court action, including cases heard in tax court.[13] However, the district court retains discretion to determine which party, if any, qualifies as a

7. *Continental Sales and Equipment v. Town of Stuntz*, 257 N.W.2d 546, 550 (Minn.1977) (internal citations omitted).

8. *Ryan v. ITT Life Ins. Corp.*, 450 N.W.2d 126, 128 (Minn.1990).

9. *See* Minn.Stat. § 278.01, subd. 1 (1996).

10. *Rice Lake Contracting Corp. v. Rust Env't & Infrastructure, Inc.*, 549 N.W.2d 96, 98–99 (Minn.App.1996), *pet. for rev. denied* (Minn., Aug. 20, 1996).

11. Minn.Stat. § 271.01, subd. 5 (1996).

12. *Haugland v. Canton*, 250 Minn. 245, 254, 84 N.W.2d 274, 280 (1957).

13. *Classic Affairs, Inc. v. Commissioner of Revenue*, 507 N.W.2d 615, 616 (Minn.1993) (affirming tax court's award of costs).

prevailing party.[14]

■ The County's motion for summary judgment, including dismissal of many of Benigni's claims, was granted in all respects by the tax court. However, the tax court's decision reduced Benigni's property tax assessments for 1996, thereby granting relief to Benigni. In light of the particular facts of this case, there is no basis to hold that the tax court abused its discretion in not naming a prevailing party and in not awarding costs.

Affirmed.

Lancaster, J., took no part in the consideration or decision of this case.

**14.** *Matter of Gershcow's Will,* 261 N.W.2d 335, 340 (Minn.1977).